Hamilton, J.
The plaintiff below, defendant in error here, recovered a judgment against the defendant, The Pullman Company, on account of th'e loss of a sum of money amounting- to $190, alleged to have been taken by the porter on a car of The Pullman Company from a berth which was or had been occupied by the plaintiff and his wife at or immediately preceding the / time that the money was taken. After reciting the corporate power of The Pullman Company and the nature of its business, the amended petition contains the following allegations :■
“Plaintiff further says that on or about May Í2th, 1911, he boarded a sleeping oar belonging to, operated and maintained by the defendant company in the city of Cincinnati, and for a valuable *311 consideration paid by him to the defendant company, he" was provided with a seat known as lower berth number twelve (12) for the purpose of occupancy and slumber, during plaintiff’s journey from the city of Cincinnati, Ohio, to the city of New York, state of New York, and that said sleeping car was known as car number two (2) and was attached to train number two (2) operated by the Pennsylvania Railroad Company, and that plaintiff •during said journey used and occupied said berth known as berth number twelve (12) in said car as 'aforesaid.
“Plaintiff further says that defendant was guilty of a breach of its contract with plaintiff in that it carelessly and negligently failed to guard said berth and car while he was riding thereon. Plaintiff. further says that defendant failed and neglected to provide proper, honest, trustworthy and careful employes on said car to perform the services required of it in the discharge of its contract with plaintiff.
“Plaintiff further says that by reason of the payment of said valuable consideration defendant agreed and undertook to allow plaintiff and his wife to use lower berth number twelve (12) on said -car for the purpose of occupancy and slumber; that among the servants and employes provided by the' defendant to perform its contract with plaintiff in making up the berth for the use of plaintiff and his wife during the night, and to replace the bedding of said berth and restore the same in condition for day travel, was a servant and employe of said company designated and known as the porter. That on or about May 12, 1911, the porter *312 on said oar did convert said seat into a berth, and that on or about the 13th day of May, 1911, replaced the bedding in saith berth and restored it to a seat for day travel, and that while engaged in' his duties of replacing said bedding and restoring said berth as aforesaid, said porter, while acting as aforesaid in the course of his employment, did wrongfully and unlawfully take and convert to his own use, from a pillow lying in said berth, the sum of one hundred and ninety dollars ($190.00), which was the property of the plaintiff and which plaintiff had taken with him on said journey to use for reasonable traveling expenses.”
■Following the above allegations is a prayer for judgment' for the sum of $190 with interest.
The defendant challenged the sufficiency of the amended petition both by demurrer and answer, urging the proposition that the claim was one for tort and was barred in four years under the statute.
We can not agree with this proposition. While the plaintiff could undoubtedly have prosecuted this action as for tort, he does not do so, but sets up the contractual relation which impliedly follows the purchase by a passenger of a ticket, and the sale to him of a ticket by the company’s agent, as set forth in the petition. That such an implied 'contract arises from this transaction there can be no doubt.
4 Elliott on Railroads (2 ed.), Section 1618, lays down the following principle of law:
“The nature of the service rendered by sleeping car companies is public, .and they are in some measure instrumentalities of interstate commerce, *313 and hence considerations of public policy, have weight in determining what their obligations are and the general character of their duties. We think that principle requipes the conclusion that in all matters peculiar to sleeping cars and their appurtenances, a sleeping car company owes to those with whom it contracts a special and distinct duty.”
And in Lewis v. The New York Sleeping Car Co., 143 Mass., 267, on page 272, ‘we find the following language in the opinion of the court:
“When a person buys the right to the use of a berth in a sleeping car, it is entirely clear that the ticket which he receives is not intended to, and does not, express all the terms of the contract into which he enters. Such ticket, like the ordinary railroad ticket, is little more than a symbol intended to show to the agents in charge of the car that the possessor has entered into a contract with the company owning the car, by which he is entitled to passage in the car named on the ticket.
“Ordinarily, the only communication between the parties is, that the passenger buys, and the agent of the car company sells, a ticket between two points; but the contract thereby entered into is implied from the nature and usages of the employment of the company.”
This we think to be the law, and this view is supported by abundant authority. While some of the allegations of the amended petition sound in tort, yet considering the amended petition as a whole we think it is sufficient to support a claim as arising on contract, and therefore com *314 iny within the six-year limitation under the statute. And further construing the amended petition as supporting a claim arising on contract we also find that a breach of the contract is sufficiently alleged.
It therefore follows that the amended petition stated a good cause of action and the demurrer was properly overruled; and the court did not err in sustaining the demurrer to this ground of defense in the answer.
It is contended by plaintiff in error that there was no evidence that the theft of the money was within the scope of authority of the porter.
In the case of Bonser v. The Pullman Co., 2 Ohio App., 35, this court held that “a sleeping car company is not an insurer of the safety of property belonging to its passengers although 'held to a high degree of care in its protection.”
Under this rule it was the duty of the company to employ competent and trustworthy employes and to exercise a high degree of care in the protection of the defendant in error and his property. The evidence discloses that the wife of defendant in error pinned the money in the pillow and placed it by the wall on the, inside of the berth occupied by defendant in error and herself; that the money was taken from this pillow while the husband and wife were in the dressing rooms of the Pullman car; that,the porter made up the berth while they were dressing, and the wife upon her return to the berth immediately discovered the loss. The only rational conclusion is that if the porter took the money he took it while engaged in making up the berth, and making up the berth was one of *315 the very things for which he was employed, and the theft — if ‘by'the porter — having occurred while he was making up the berth, it must be held that it was done, in the course of his employment.
On this proposition the case at bar presents a much stronger case than many of the authorities cited in the briefs of counsel. As to whether or not the porter took the money was a question for the jury, and under an examination of . the evidence we are unwilling to disturb the judgment as being manifestly -against the .weight of the evidence.
Plaintiff in error further complains of the charge of the court to the effect that the plaintiff might recover such a sum as the jury upon the evidence should find to have been a reasonable sum to be carried by the plaintiff, in view of the journey that was being undertaken by him, on the ground that there was no evidence tending •to show what such a reasonable sum would be. In our opinion the jury were fully justified in finding that the sum of $190 was not an excessive sum for the defendant in error to carry with him for expenses on a trip of himself and wife from Cincinnati to New York.
Finding no prejudicial error in the record, the judgment is affirmed. ■

Judgment affirmed.

Jones, P. - J., and Gorman, J., concur.